**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5779-14T2

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

Y.G. and G.S.,

    Defendants,

and

B.B.B.,

    Defendant-Appellant.

_____

IN THE MATTER OF Z.G., a minor.

_____

        Submitted March 7, 2017 — Decided August 18, 2017

        Before Judges Messano and Espinosa.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Essex County,
        Docket No. FN-07-376-14.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Laura Orriols, Designated
        Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Brittany Anne Wilcox, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Lisa J. Godfrey, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant B.B.B. (Bryce)[1] appeals from an adjudication of abuse and neglect, N.J.S.A. 9:6-8.21, arising from the undisputed fact that he and his girlfriend, defendant Y.G. (Yvette),[2] left her three-year-old daughter, Z.G. (Zoe), alone in his Irvington apartment while they visited friends in Clifton. He argues there was insufficient evidence to support the conclusion that he was a "responsible party" under N.J.S.A. 9:6-8.21, that he had no duty under the statute and that the trial judge erred in finding he admitted to cohabiting with Zoe. We disagree and affirm.

At the outset of the fact-finding hearing, the State submitted three exhibits: a Screening Summary, dated December 20, 2013, an Investigation Summary, dated December 20, 2013, and a collection of police records pertaining to Bryce and Yvette, dated December

---

[1] We use pseudonyms to protect the privacy of the child.

[2] Yvette has not appealed from the adjudication against her.

20, and 21, 2013, into evidence with the consent of defendants. At the request of Yvette's counsel, the trial judge agreed not to consider hearsay statements contained in the documents.

Merika Henry, a Special Response Unit investigator with the Division of Child Protection and Permanence (the Division), testified she reported to the Irvington Police Department on December 20, 2013 to investigate a referral that a maintenance man had found a two-year-old child alone in an apartment on Stuyvesant Avenue in Irvington that contained drug paraphernalia. She observed Zoe, who was actually three years old, was appropriately attired but was not wearing socks and did not have a coat. Henry interviewed both Yvette and Bryce, who arrived at the police department at approximately 5:00 p.m.

Yvette admitted leaving Zoe home alone. Yvette said she had been Bryce's girlfriend for eight months. She stated further that she and Zoe had been residing with Bryce at the Irvington apartment he leased for the past few months.

Yvette stated she put Zoe down for a nap at approximately 1:30 p.m. and left the apartment with Bryce approximately one-half hour later to go to Clifton to drop off some items for a friend. When asked the friend's name and address, Yvette said she did not know. At first, Yvette claimed a trip to Clifton took ten minutes. Henry advised her the trip would take twenty minutes. The trip

took even longer because they had a flat tire when they arrived in Clifton and were delayed by traffic on their return trip, arriving at the apartment at approximately 5:00 p.m.

Asked about the drugs and paraphernalia in the apartment, Yvette initially denied having any knowledge about it. She later stated the items belonged to Bryce but said he did not use drugs in the home.

Henry also asked Yvette about Zoe's routine. She stated Zoe usually goes to bed at approximately 7:00 p.m. and arises at 6:00 a.m. She stated Zoe had last eaten at approximately 11:00 a.m., when she gave her cereal and milk. When asked about leaving Zoe alone, Yvette stated that usually when Zoe wakes up, she would not come out of the bedroom. She said this was the first time she left her home alone and admitted to a feeling that "something was going to go wrong, but . . . she didn't think anything of it."

Bryce confirmed that he and Yvette had gone to Clifton to visit a friend after they put Zoe down for a nap at about 1:30 p.m. He stated they left the apartment at about 2:00 p.m. and returned around 5:00 p.m. Bryce was also unable to provide an address for the friend in Clifton. He felt nothing was wrong with his actions because when he was younger, residing in the United Kingdom, his mother left him alone. He also admitted he had left

4

Zoe home alone in the past while he ran to the corner store to run errands and she appeared to be fine.

Asked about the drug paraphernalia, Bryce stated they belonged to him but denied any recent drug usage and said he kept the items for a friend.

Following these interviews, the Division determined to execute an emergency removal of Zoe pursuant to N.J.S.A. 9:6-8.29 and 9:6-8.30. Zoe was taken to a hospital where she was examined and reported to be healthy.

Henry was also the supervisor for Danielle Howell, the Division caseworker assigned to the case. Yvette told Howell she now resided with a friend in Clifton, whom she was unable to name, and visited Bryce's apartment with Zoe on the weekends. Asked how she supports herself, Yvette stated she was unemployed and Bryce was the one who was working.

Howell was able to inspect Bryce's apartment, a one-bedroom apartment heated only by a space heater. There was no separate bed for Zoe. Yvette told Howell that Zoe shared the same bedroom and bed with Bryce and her.

Yvette and Bryce attended the fact-finding hearing but did not testify.

Relying upon "the uncontroverted . . . admissions of the parties," the trial judge made findings that included the following:

> It is quite clear that the defendants left this child, made a conscious decision to leave this child alone. They didn't return for three hours. This is a three-year-old child in the middle of December . . . in an apartment that had no [heat]. So we're talking about a space heater with a small child, drug paraphernalia loose, available to this child. There were so many potentially dangerous issues leaving a three-year-old alone that seems unconscionable to me. And they admitted it.

He found the Division had proven by a preponderance of the evidence that:

> [T]he parties admitted they were living together. They were a couple. They were caring for this child. They were the caretaker role. [Bryce] was in that role and does not require that he be a parent to be substantiated. He was in a caretaker role. The two of them decided to leave this child alone in an apartment, unheated apartment in the middle . . . of December. It seems to be a — a totally foolhardy decision that fortunately, but for the grace of God there was no harm to this child, but there was clearly more than a substantial risk of harm to this child under these circumstances. And I do find the Division has proven its case by a preponderance of the evidence as to both of these parties.

A finding of abuse and neglect is proven by a preponderance of "competent, material and relevant evidence," N.J.S.A. 9:6-

6

8.46(b), that the responsible person failed "to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship."  N.J.S.A. 9:6-8.21(c)(4)(b).

Bryce does not challenge the conclusion that leaving Zoe alone under the circumstances here satisfied this standard.  He argues the adjudication as to him must be reversed because the judge erred in relying on a "mistaken . . . admission to cohabitation, . . . the length of the relationship between the adults and one instance of prior babysitting by [him]" to find he was a caregiver under the statute.  He contends these facts are insufficient to establish his status as a responsible party.[3]  We disagree.

Our review of the trial judge's factual findings is limited. N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010).  We accord deference to those findings "unless the trial court's findings 'went so wide of the mark that a mistake must have been made.'"  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App.

---

[3]  Bryce also argues, for the first time in this appeal, that "constitutional law prohibits a finding that [he] is a responsible party under N.J.S.A. 9:6-8.21" because the term "paramour of a parent" is undefined in the statute and any plain meaning definition would be "vague" and "overbroad."  This argument lacks sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Div.), <u>certif. denied</u>, 117 <u>N.J.</u> 165 (1989)). Legal conclusions are reviewed de novo. <u>N.J. Div. of Child Prot. & Permanency v. K.G.</u>, 445 <u>N.J. Super.</u> 324, 342 (App. Div.), <u>certif. denied</u>, 228 <u>N.J.</u> 38 (2016).

Here Bryce challenges the trial judge's factual findings as well as his legal conclusion that the evidence showed Bryce had a duty "to exercise a minimum degree of care . . . in providing [Zoe] with proper supervision or guardianship." <u>N.J.S.A.</u> 9:6-8.21(c)(4)(b). Specifically, Bryce challenges the findings of fact the trial judge made and relied upon to conclude he was a responsible party under the statute. He contends he never admitted Yvette and Zoe lived with him and argues there was insufficient evidence to establish he was Yvette's paramour.

Although Bryce contends the admission of cohabitation was a mistake, it was not corrected at the fact-finding hearing and, in any event, proof of cohabitation is not necessary to fall within the scope of this statute. <u>See</u> <u>State v. Galloway</u>, 133 <u>N.J.</u> 631, 658-61 (1993) (interpreting "parent of guardian" in the related context of criminal child endangerment, <u>N.J.S.A.</u> 2C:24-4(a), to include "those who have assumed a general and ongoing responsibility for the care of the child" which "may be based on a parental relationship, legal custody or on less-structured

relations; or it may arise from cohabitation with the child's parent" (emphasis added)).

It is undisputed that Bryce and Yvette had been in a relationship for eight months at the time Zoe was left alone. Even if Yvette and Zoe only stayed with him on weekends, the uncontroverted admission was that they stayed together in one bedroom, sharing a bed. Bryce's status as paramour was therefore established by a preponderance of the evidence.

The second critical component, which is the crux of this appeal, is the legal question whether the facts support the conclusion that Bryce had a duty to exercise a minimum degree of care for Zoe. Significantly, it is unnecessary for a person to have any legal or formal status as a parent or guardian to have a duty to exercise this minimum degree of care. The definition of "[p]arent or guardian" under N.J.S.A. 9:6-8.21(a) includes: "any natural parent, . . . paramour of a parent, or any person, who has assumed responsibility for the care, custody, or control of a child or upon whom there is a legal duty for such care."

Bryce admitted he had left Zoe alone in the past when he went to the corner store to do errands. Although he now contends he only babysat for Zoe on one occasion, the admission he made to the Division caseworker was not so qualified and was not challenged at the fact-finding hearing.

Bryce also argues he should not be held responsible because Zoe's mother was present and was the final authority on her being left alone. We disagree. There is sufficient evidence to support the conclusion that, during his eight-month relationship with Yvette, Bryce also assumed a caregiving role for Zoe. This does not mean he was the principal caregiver or even a caregiver on a daily basis. He had crossed the threshold from casual acquaintance to someone who had provided care for her. That being the case, even if Yvette was primarily responsible for the decision to leave Zoe alone, Bryce had a duty to exercise a minimum degree of care and caution against a decision that plainly exposed Zoe to a substantial risk of harm.

Instead, he joined in the decision to leave a three-year-old, three hours after she was last fed, in an apartment heated only by a space heater for an excursion that, under the best circumstances, would leave her unsupervised for at least forty minutes. There is no evidence he exercised a minimum degree of care by objecting to a decision by Yvette to leave Zoe unattended. Rather, he expressed his approval of this decision, even stating he had done so in the past.

Therefore, we find the trial judge's decision to be adequately supported by the evidence and concur with his legal conclusion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

11